NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

THOMAS F. MOTAMED, GEORGE R.
FAY, and DAVID S. FOWLER,

Plaintiffs,

v.

THE CHUBB CORPORATION and THE
AYCO COMPANY, L.P.,

Defendants.

Civ. No. 15-7262

**OPINION**

THOMPSON, U.S.D.J.

This matter comes before the Court upon Defendant The Ayco Company, L.P.'s ("Ayco") Motion to Dismiss the Amended Complaint of Plaintiffs Thomas F. Motamed, George R. Fay, and David S. Fowler ("Plaintiffs"). (ECF No. 49). Ayco moves to dismiss the Amended Complaint on the basis of Federal Rule of Civil Procedure 12(b)(6). (*Id.*). Plaintiffs oppose. (ECF No. 53). The Court has issued the Opinion below based upon the written submissions of the parties and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Ayco's Motion to Dismiss will be granted.

BACKGROUND

Plaintiffs are former executive employees of Defendant The Chubb Corporation ("Chubb"). Chubb is an insurance company in the business of writing and selling property and casualty insurance. Plaintiffs' allegations are as follows: as employees of Chubb, Plaintiffs participated in a company retirement program, which entitled them to certain deferred compensation benefits after retirement. In 1999, Chubb offered Plaintiffs the opportunity to participate in a new benefit program called The Chubb Corporation Estate Enhancement

1

Program. This program was designed to reduce Plaintiffs' estate tax payments by providing part of their compensation in the form of a life insurance policy, which would not be taxed. Defendant The Ayco Company, L.P. ("Ayco"), a subsidiary of Goldman Sachs Group, Inc., advised Chubb on the creation of the program, helped market the program, and also acted as an individual financial adviser to Plaintiff George Fay.

To participate in the program, Plaintiffs would relinquish their rights to up to 75% of their accrued benefits in the company pension plan. In return, Chubb would purchase a variable life insurance policy for each plaintiff under a split-dollar arrangement. Chubb would make a one-time premium payment to the insurance company in the amount of approximately four times the relinquished pension benefit. The policy provided a death benefit payable upon the death of each plaintiff, and if so chosen, the death of that plaintiff's spouse. Under the split-dollar arrangement, each plaintiff's estate would receive 75% of the face value of the policy, and Chubb would receive 25% of the face value of the policy and the policy cash value. In marketing the program to Plaintiffs, Chubb stated that the financial results from participating in the program were potentially much better than the Plaintiffs would receive through the deferred pension plan.

All three plaintiffs chose to participate in the program and relinquished between $100,000 and $462,500 in pension benefits in exchange for life insurance policies with face values between $3,630,000 and $15,000,000. All of the plaintiffs signed up for the Survivorship Policy, which also insured the life of their spouse. As part of the program, each plaintiff entered into an Estate Enhancement Program Agreement with Chubb and also signed a form called the Enrollment and Election to Forego Compensation Form.

Plaintiffs believed that Chubb would select appropriate insurance policies, pay the required premiums to purchase the insurance, and properly manage the investments under the policies, such that Plaintiffs' estates would be guaranteed to receive the face value of the life insurance policies. Chubb did pay the initial premiums to purchase the policies. However, the face value of each policy was an estimate based on an estimated return on the investments in the policies of at least 8.76% per year, compounded for the life of the policies. The investments have not resulted in a return of at least 8.76%. Therefore, on May 14, 2010, Plaintiffs received a letter advising them that the life insurance policies would lapse unless they made significant additional premium payments. If the policies were to lapse, the policies would become worthless, and Plaintiffs would receive nothing in exchange for their relinquished pension benefits.

Meanwhile, Plaintiffs have been required to pay taxes each year on the economic value of the death benefit. This value increased over time and will increase dramatically after the death of the first insured of each couple. At some point, these tax payments will become unaffordable for Plaintiffs. The policies do not contain any provision that would allow Plaintiffs to exit the policies after the tax payments become unaffordable.

On October 2, 2015, Plaintiffs filed suit against Chubb and Ayco, arguing that the benefit program was inadequately designed and marketed and should not have been offered by Chubb to its executives. Plaintiffs assert claims against Chubb under theories of breach of contract, breach of fiduciary duty, and detrimental reliance. Plaintiffs assert additional claims against Ayco for its role in designing and marketing the program, under the theory of negligent misrepresentation. Plaintiff George Fay also asserts claims against Ayco based on the individual financial advising Ayco provided him on grounds of breach of contract and professional malpractice.

The parties stipulated to an extended briefing schedule. On December 11, 2015, Chubb and Ayco filed motions to dismiss Plaintiff's complaint. In lieu of opposing the motions to dismiss, Plaintiffs filed the Amended Complaint on January 4, 2016. On January 25, 2016, Chubb and Ayco filed motions to dismiss Plaintiff's Amended Complaint. Ayco's Motion to Dismiss is presently before the Court.

## DISCUSSION

A. Legal Standard

A motion under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id*. (quoting *Ashcroft v. Iqbal*, 56 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court may disregard any conclusory legal allegations. *Id*. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). Such a claim requires more than mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct;" instead, the facts must allow a court to reasonably infer "that the defendant is liable for the misconduct alleged." *Id*. at 210, 211 (quoting *Iqbal*, 556 U.S. at 678-79).

...
...
...
...
...

B. Analysis

Ayco offers four justifications for its Motion to Dismiss. First, Ayco argues that Plaintiffs' claims are time-barred under the relevant statutes of limitations. Second, Ayco claims that Plaintiffs fail to plead essential elements of a negligent misrepresentation claim. Third, Ayco argues that Plaintiff Fay has failed to plead any elements of a breach of contract claim. Fourth, Ayco asserts that Fay fails to state a claim for professional malpractice because he fails to plead reliance.

First, Ayco argues that Plaintiffs' claims are time-barred under the claims' six-year statutes of limitations. The Third Circuit permits a limitations defense to be raised by a Rule 12(b)(6) motion "only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002) (internal citation omitted). However, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (internal citation omitted). As always, when considering a motion to dismiss, the Court may only consider the allegations contained in the complaint, exhibits attached to the complaint, documents integral to or explicitly relied upon in the complaint, and matters of public record. *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014).

Both parties agree that the statutes of limitations for Plaintiffs' claims of negligent misrepresentation, breach of contract, and professional malpractice are six years. However, under the discovery rule, "the accrual of a cause of action is delayed until the injured party discovers, or by the exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim." *RTC Mortg. Trust 1994N-1 v. Fidelity Nat'l Title Ins. Co.,* 58 F. Supp. 2d 503, 543 (D.N.J. 1999). While Ayco argues that the discovery rule

should not apply to Fay's breach of contract claim, the Court finds that the rule is applicable here because Ayco's alleged actions are "by their nature . . . self-concealing or undiscoverable." *Nix v. Option One Mortgage Corp.*, No. 05-03685, 2006 WL 166451, at *11 (D.N.J. Jan. 19, 2006) (citing *Cnty. of Morris v. Fauver*, 707 A.2d 958, 972 (N.J. 1998)).  Therefore, the Court will apply the discovery rule to Plaintiffs' claims against Ayco.

     At this stage of the proceedings, the Court must accept as true all of Plaintiffs' well-pleaded factual allegations.  Plaintiffs allege that they did not discover the flaws in the benefit program until the May 14, 2010 letter updating them on the status of the program's investments.  The May 14, 2010 date is within six years of the filing of the initial complaint on October 2, 2015.  Therefore, it is not apparent that the claims are facially untimely.  Ayco claims that Plaintiffs received a similar letter in 2006, which would push the discovery date back to 2006 and make the lawsuit filed in 2015 untimely.  However, because the 2006 letter is not contained in, attached to, or integral to the Amended Complaint, nor is it a matter of public record, the Court may not consider the letter at this time.

     Ayco also claims that Plaintiffs should have discovered the flaws in the program upon receipt of the life insurance policies.  But this is not a case where "the plain and unambiguous terms of the Policy contradict[] [Ayco's] alleged misrepresentations." *Andrea v. Metro. Life Ins. Co.*, No. 00-0911, 2000 WL 35361960, at *2 (D.N.J. Aug. 14, 2000).  Evaluating whether the terms of the policy contradict Ayco's alleged misrepresentations goes to the heart of the merits of this case, and thus would not be appropriate for the Court to decide at this time.  Therefore, the date of the receipt of the policies will not trigger the beginning of the statute of limitations for purposes of Ayco's Motion to Dismiss.  The Court will deny dismissal of the claims against Ayco on this basis.

Second, Ayco argues that Plaintiffs fail to state a claim for negligent misrepresentation. Under New Jersey law, the elements of a negligent misrepresentation claim are: (1) the defendant negligently made a false communications of material fact; (2) the plaintiff justifiably relied upon the misrepresentation; and (3) the reliance resulted in an ascertainable loss or injury. *Elias v. Ungar's Food Products, Inc.*, 252 F.R.D. 233, 251 (D.N.J. 2008). Ayco asserts that the Amended Complaint contains no plausible allegations of misrepresentations and no justifiable reliance because the plan materials and insurance policies fully disclosed all of the alleged defects. This argument goes to the merits of Plaintiffs' case and would more appropriately be pleaded in Ayco's answer. *See Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657 (3d Cir. 2003). Therefore, the Court will not dismiss the claim on this basis.

However, the Court agrees that Plaintiffs failed to plead an essential element of their claim of negligent misrepresentation. Plaintiffs did supply some factual allegations of a false communication of material fact when they stated that "Ayco represented through memoranda, brochures and other communications that the Estate Enhancement Program was viable, would function as intended, that the insurance policies that would form the basis of the program were appropriate, and that plaintiffs would receive substantive benefits from participation in the program." (Am. Compl. ¶ 58, ECF No. 41). While Plaintiffs could have provided more detail, these allegations provide enough material to survive a motion to dismiss. But Plaintiffs provide no factual allegations of justifiable reliance. Plaintiffs plead only that "Plaintiffs Motamed, Fay, and Fowler justifiably relied on the information supplied to them and the representation that the Estate Enhancement Program would be an effective program when they opted to participate in the program and relinquish their rights to receive benefits under the Chubb Pension Excess Benefit Plan." (*Id.* ¶ 61). This allegation consists only of a legal conclusion that Plaintiffs

justifiably relied on Ayco's misrepresentations, but does not contain any factual allegations. The Court will disregard this legal conclusion for purposes of the Motion to Dismiss. *Fowler*, 578 F.3d at 210-11. Because Plaintiffs have failed to allege facts supporting justifiable reliance, the Court will dismiss the negligent misrepresentation claim (Count VI) without prejudice.

Third, Ayco argues that Fay has failed to plead any elements of a breach of contract claim. To establish a breach of contract claim under New Jersey law, a plaintiff must plead three elements: "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)).

The Court agrees that Fay has failed to plead required elements of a breach of contract claim. For the period prior to November 6, 2006, Fay has not pled that a valid contract existed between the parties. According to the Amended Complaint, the financial advice that Fay received prior to 2006 was the result of a contract between Chubb and Ayco. Fay was not a party to that contract with Ayco, and he has not pled that he was a third-party beneficiary of that contract. Therefore, he has not pled that a valid contract existed for this period. For the period after November 6, 2006, Fay has not pled a causal relationship between the alleged breach of contract and his alleged damages. Fay states that after he retained Ayco to provide financial services in 2006, "Ayco did not advise Mr. Fay that there were problems or flaws with the Estate Enhancement Program, or that Fay should take any action with respect to his participation in the program." (Am. Compl. ¶ 72). Fay does not indicate how Ayco's failure to advise him of the flaws in the benefit program at this point created any additional injury, or how receiving this

warning could have lessened the harm Fay suffered. Given that all parties acknowledge that there was no exit mechanism from the program, it is not clear that advice provided after November 6, 2006 could have had any effect on Fay's position. Because of Fay's failure to plead essential elements of the claim, the Court will dismiss the breach of contract claim against Ayco (Count VII) without prejudice.

Finally, Ayco argues that Fay fails to state a claim for professional malpractice because he does not plead reliance. A professional malpractice claim, such as the one involved here, accrues when "(1) the claimant suffers an injury or damages; and (2) the claimant knows or should know that its injury is attributable to the professional negligent advice." *Vision Mortgage Corp. v. Patricia J. Chiapperini, Inc.*, 704 A.2d 97, 100 (N.J. Super. Ct. App. Div. 1998), *aff'd,* 722 A.2d 527 (N.J. 1999) (citation omitted). Fay states that he consulted with Ayco about the proposed program "to learn more about the program and obtain Ayco's recommendations." (Am. Compl. ¶ 76). Although Fay states that "Ayco advised Mr. Fay to participate in the Estate Enhancement Program," Fay never states that he participated in the program because Ayco gave him this advice. By failing to state that he participated in the program on the basis of Ayco's advice, Fay has not pled that the injury is "attributable to" or caused by the allegedly professionally negligent advice. Therefore, Fay has not pled a required element, and the count for professional malpractice (Count VIII) must be dismissed. However, this count will also be dismissed without prejudice.

CONCLUSION

For the reasons stated above, Ayco's Motion to Dismiss Plaintiffs' Amended Complaint will be granted, and all of the counts against Ayco (Counts VI, VII, and VIII) will be dismissed without prejudice. Ayco's prior motion to dismiss Plaintiffs' original complaint will be denied as moot. A corresponding order follows.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

**Dated:** March 11, 2016