NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THOMAS F. MOTAMED, GEORGE R. FAY, and DAVID S. FOWLER, | Civ. No. 15-7262 |
| Plaintiffs, | **OPINION** |
| v. | |
| THE CHUBB CORPORATION and THE AYCO COMPANY, L.P., | |
| Defendants. | |

THOMPSON, U.S.D.J.

This matter comes before the Court upon Defendant The Chubb Corporation's ("Chubb") Motion to Dismiss the Amended Complaint of Plaintiffs Thomas F. Motamed, George R. Fay, and David S. Fowler ("Plaintiffs"). (ECF No. 50). Chubb moves to dismiss the Amended Complaint on the basis of Federal Rule of Civil Procedure 12(b)(6). (*Id.*). Plaintiffs oppose. (ECF No. 52). The Court has issued the Opinion below based upon the written submissions of the parties and without oral argument pursuant to Federal Rule of Civil Procedure 78(b). For the reasons stated herein, Chubb's Motion to Dismiss will be granted in part and denied in part.

BACKGROUND

Plaintiffs are former Chubb executive employees. Chubb is an insurance company in the business of writing and selling property and casualty insurance. Plaintiffs' allegations are as follows: as employees of Chubb, Plaintiffs participated in a company retirement program, which entitled them to certain deferred compensation benefits after retirement. In 1999, Chubb offered Plaintiffs the opportunity to participate in a new benefit program called The Chubb Corporation Estate Enhancement Program. This program was designed to reduce Plaintiffs' estate tax

1

payments by providing part of their compensation in the form of a life insurance policy, which would not be taxed. Defendant The Ayco Company, L.P. ("Ayco"), a subsidiary of Goldman Sachs Group, Inc., advised Chubb on the creation of the program, helped market the program, and also acted as an individual financial adviser to Plaintiff George Fay.

To participate in the program, Plaintiffs would relinquish their rights to up to 75% of their accrued benefits in the company pension plan. In return, Chubb would purchase a variable life insurance policy for each plaintiff under a split-dollar arrangement. Chubb would make a one-time premium payment to the insurance company in the amount of approximately four times the relinquished pension benefit. The policy provided a death benefit payable after the death of each plaintiff and his spouse. Under the split-dollar arrangement, each plaintiff's estate would receive 75% of the face value of the policy, and Chubb would receive 25% of the face value of the policy and the policy cash value. In marketing the program to Plaintiffs, Chubb stated that the financial results from participating in the program were potentially much better than the Plaintiffs would receive through the deferred pension plan.

All three plaintiffs chose to participate in the program and relinquished between $100,000 and $462,500 in pension benefits in exchange for life insurance policies with face values between $3,630,000 and $15,000,000. As part of the program, each plaintiff entered into an Estate Enhancement Program Agreement with Chubb and also signed an Enrollment and Election to Forego Compensation Form.

Plaintiffs believed that Chubb would select appropriate insurance policies, pay the required premiums to purchase the insurance, and properly manage the investments under the policies, such that Plaintiffs' estates would be guaranteed to receive the face value of the life insurance policies. Chubb did pay the initial premiums to purchase the policies. However, the

face value of each policy was an estimate based on an estimated return on the investments in the policies of at least 8.76% per year, compounded for the life of the policies. The investments have not resulted in a return of at least 8.76%. Therefore, on May 14, 2010, Plaintiffs received a letter advising them that the life insurance policies would lapse unless they made significant additional premium payments. If the policies were to lapse, the policies would become worthless, and Plaintiffs would receive nothing in exchange for their relinquished pension benefits.

Meanwhile, Plaintiffs have been required to pay taxes each year on the economic value of the death benefit. This value increased over time and will increase dramatically after the death of the first insured of each couple. At some point, these tax payments will become unaffordable for Plaintiffs. The policies do not contain any provision that would allow Plaintiffs to exit the policies after the tax payments become unaffordable.

On October 2, 2015, Plaintiffs filed suit against Chubb and Ayco, arguing that the benefit program was inadequately designed and marketed and should not have been offered by Chubb to its executives. Plaintiffs asserted claims against Chubb under theories of breach of contract, breach of fiduciary duty, and detrimental reliance. Plaintiffs asserted additional claims against Ayco for its role in designing and marketing the program, under the theory of negligent misrepresentation. Plaintiff George Fay also asserted claims against Ayco based on the individual financial advising Ayco provided him on grounds of breach of contract and professional malpractice.

The parties stipulated to an extended briefing schedule. On December 11, 2015, Chubb and Ayco filed motions to dismiss Plaintiff's Complaint. In lieu of opposing the motions to dismiss, Plaintiffs filed the Amended Complaint on January 4, 2016. On January 25, 2016,

Chubb and Ayco filed motions to dismiss Plaintiff's Amended Complaint. On March 15, 2016, the Court granted Ayco's motion to dismiss Plaintiffs' claims against Ayco. Chubb's Motion to Dismiss is presently before the Court.

## DISCUSSION

A. Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). The defendant bears the burden of showing that no claim has been presented. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). When considering a Rule 12(b)(6) motion, a district court should conduct a three-part analysis. *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'take note of the elements a plaintiff must plead to state a claim.'" *Id*. (quoting *Ashcroft v. Iqbal*, 56 U.S. 662, 675 (2009)). Second, the court must accept as true all of a plaintiff's well-pleaded factual allegations and construe the complaint in the light most favorable to the plaintiff. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The court may disregard any conclusory legal allegations. *Id*. Finally, the court must determine whether the "facts are sufficient to show that plaintiff has a 'plausible claim for relief.'" *Id*. at 211 (quoting *Iqbal*, 556 U.S. at 679). Such a claim requires more than a mere allegation of an entitlement to relief or demonstration of the "mere possibility of misconduct;" instead, the facts must allow a court to reasonably infer "that the defendant is liable for the misconduct alleged." *Id*. at 210, 211 (quoting *Iqbal*, 556 U.S. at 678-79).

B. Analysis

Chubb makes multiple arguments for dismissal of each count against the company, as well as an argument that all counts should be dismissed as untimely. The Court will address Chubb's timeliness argument first, and then address each count against Chubb in turn.

*1. Timeliness*

Chubb argues that Plaintiffs' claims should be dismissed as time-barred by the applicable six-year statutes of limitations. Chubb notes that Plaintiffs' entire case rests on actions Chubb took in 1999, significantly more than six years before the case was filed on October 2, 2015. Chubb argues that the discovery rule does not apply, and even if the discovery rule does apply, Plaintiffs should have discovered the alleged flaws in the program no later than when they received the insurance policies in 1999.

The Third Circuit permits a statute of limitations defense to be raised by a Rule 12(b)(6) motion "only if the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 134-35 (3d Cir. 2002) (internal citation omitted). However, "[i]f the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.* (internal citation omitted).

All parties agree that the statutes of limitations for Plaintiffs' claims are six years. However, under the discovery rule, "the accrual of a cause of action is delayed until the injured party discovers, or by the exercise of reasonable diligence and intelligence should have discovered, that he may have a basis for an actionable claim." *RTC Mortg. Trust 1994N-1 v. Fidelity Nat'l Title Ins. Co.,* 58 F.Supp.2d 503, 543 (D.N.J. 1999). While Chubb argues that the discovery rule should not apply to Plaintiffs' breach of contract claims, the Court finds that the

5

rule is applicable here because Chubb's alleged breach of contract through inadequate disclosures is "by [its] nature . . . self-concealing or undiscoverable." *Nix v. Option One Mortgage Corp.*, No. 05-03685, 2006 WL 166451, at *11 (D.N.J. Jan. 19, 2006) (citing *Cnty. of Morris v. Fauver*, 707 A.2d 958, 972 (N.J. 1998)). Therefore, the discovery rule will apply to all of Plaintiffs' claims against Chubb.

At this stage of the proceedings, the Court must accept as true all of Plaintiffs' well-pleaded factual allegations. Plaintiffs allege that they did not discover the flaws in the benefit program until the May 14, 2010 letter updating them on the status of the program's investments. The May 14, 2010 date is within six years of the filing of the complaint on October 2, 2015. Therefore, it is not apparent that the claims are facially untimely. While Chubb argues that Plaintiffs should have discovered the flaws in the program upon receipt of the life insurance policies, this is not a case where "the plain and unambiguous terms of the Policy" contradict Chubb's alleged inadequate disclosures. *Andrea v. Metro. Life Ins. Co.*, No. 00-0911, 2000 WL 35361960, at *2 (D.N.J. Aug. 14, 2000). Because the terms of the life insurance policies are themselves at issue, the date of the receipt of the policies will not provide the trigger for the statute of limitations for purposes of the motion to dismiss. Therefore, the Court will not dismiss Plaintiffs' claims based on the applicable statutes of limitations.

   *2. Counts I-III: Breach of Contract*

Chubb argues for dismissal of the breach of contract claims because the company did not in fact breach the agreements in question. This general defense goes to the merits of the case and should be raised in responsive pleadings, not in a pre-answer motion brought under Rule 12(b)(6). *See Worldcom, Inc. v. Graphnet, Inc.*, 343 F.3d 651, 657 (3d Cir. 2003). The Court will not consider this argument at this time. However, the Court will consider Chubb's two

remaining arguments.  First, Chubb argues that Plaintiffs fail to identify specific contract provisions that were allegedly breached.  Second, Chubb argues that the nature of relief Plaintiffs seek is inconsistent with the terms of the agreements with Plaintiffs.

To establish a breach of contract under New Jersey law, a plaintiff must plead three elements: "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Intern. Ass'n Local Union No. 27, AFL–CIO v. E.P. Donnelly, Inc.*, 737 F.3d 879, 900 (3d Cir. 2013) (citing *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)).

Here, Plaintiffs identify an alleged contract with Chubb regarding participation in the Estate Enhancement Program.  Plaintiffs allege that Chubb breached the contract by selecting life insurance policies that would not accomplish the goals of the program and did not provide for the payment of additional premiums, failing to adequately disclose the risks of the program, failing to manage the investments under the policies, and providing a program that did not have exit options.  Plaintiffs claim to have suffered damages including but not limited to loss of the benefit of the Estate Enhancement Program.  Accordingly, Plaintiffs have pled all three of the required elements of a breach of contract claim.

Chubb argues that Plaintiffs nonetheless fail to state a claim because they do not identify specific provisions of the contract that were allegedly breached.  There is some variety in New Jersey caselaw as to whether a plaintiff must identify specific contract provisions to survive a motion to dismiss.  *Compare Latraverse v. Kia Motors of Am., Inc.*, No. 10-6133, 2011 WL 3273150, at *2 (D.N.J. July 27, 2011) ("Under the Federal Rules, a plaintiff is not required to include the contract with the complaint, or allege the specific provisions violated in the

7

contract."), *with Eprotec Pres., Inc. v. Engineered Materials, Inc.*, No. 10-5097, 2011 WL 867542, at *8 (D.N.J. Mar. 9, 2011) ("Under New Jersey law, a complaint alleging breach of contract must, at a minimum, identify the contracts and provisions breached.").

However, all of these opinions agree that the underlying goal of the pleading standard in a breach of contract case is notice. *See, e.g.*, *Latraverse*, 2011 WL 3273150, at *2 ("[T]he complaint does not need to resort to formulaic recitation of the elements of the alleged contract; rather, the complaint must allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond."); *Diamond Life Lighting MFG (HK) Ltd. v. Picasso Lighting, Inc.*, No. 10-0016, 2010 WL 5186168, at *2 (D.N.J. Dec. 14, 2010) (noting that "Defendants' responsibility is only to provide fair notice of what Defendants' claims are and the grounds upon which they rest.") (internal citation omitted). Where courts have dismissed claims that fail to identify specific contract provisions, generally the claims lack specificity not just as to the contract provisions but as to the entire basis of the suit, thus failing to put the defendant on notice of the plaintiff's claims. *See, e.g.*, *Eprotec.*, 2011 WL 867542, at *8 (noting that the Court could dismiss counts for breach of contract because they "are vaguely drafted to the point of incoherence, making it impossible to discern with certainty which contracts they seek to enforce"); *Faistl v. Energy Plus Holdings, LLC*, No. 12-2879, 2012 WL 3835815, at *7 (D.N.J. Sept. 4, 2012) (dismissing claim where the plaintiff's brief "raise[d] questions as to which particular agreement even forms the basis of this claim"); *Pereira v. Azevedo*, No. 12-907, 2013 WL 1655988, at *8 (D.N.J. Apr. 17, 2013) (dismissing claim where the complaint "contains no facts whatsoever to substantiate this claim").

This is not a case where the complaint is vaguely drafted to the point of incoherence or where the complaint contains no facts whatsoever to substantiate its claims. While Plaintiffs do

not cite specific contract provisions, they identify the alleged contract at issue, the behavior that allegedly violated the contract, and the damages that they allegedly suffered as a result. Chubb was adequately put on notice of what Plaintiffs' claims are and the grounds upon which they rest. Therefore, the claims will not be dismissed on this basis.

Chubb also argues that the breach of contract claims should be dismissed because the relief Plaintiffs seek is inconsistent with the terms of the agreements. "A motion to dismiss under Rule 12(b)(6) may be granted only if, after 'accepting all well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the plaintiff, plaintiff is not entitled to *any* relief.'" *Kazmi v. CCS Commerical, LLC*, No. 14-6132, 2015 WL 4392836, at *1 (D.N.J. July 15, 2015) (emphasis added) (citing *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1420 (3d Cir. 1997)). The particular form of relief requested does not determine whether a plaintiff has stated a claim upon which relief can be granted. *Benhur v. Madavaram*, No. 15-6826, 2015 WL 6739109, at *6 (D.N.J. Nov. 2, 2015) ("[T]he test of the complaint upon a motion to dismiss lies in the claim not in the demand. The only issue is whether the claim stated would give the plaintiff a right to any relief, not to the particular relief he demands." (citation omitted)); *Zodda v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa.*, No. 13-7738, 2014 WL 1577694, at *6 (D.N.J. Apr. 21, 2014) (noting that the plaintiff need not prove a claim for a particular remedy at the motion to dismiss stage); *Asphaltic Enterprises, Inc. v. Baldwin-Lima-Hamilton Corp.*, 39 F.R.D. 574, 576 (E.D. Pa. 1966) ("[I]t is well established that the prayer for relief does not determine whether the plaintiff has stated a cause of action."). Whether Plaintiffs have requested the appropriate relief is not relevant at this stage of the proceedings. The Court will not dismiss Plaintiffs' breach of contract claims on this basis.

### 3. Count IV: Breach of Fiduciary Duty

Chubb makes two arguments for dismissal of Plaintiffs' breach of fiduciary duty claim. First, Chubb argues that contrary to Plaintiffs' assertions, employers do not generally owe employees a fiduciary duty. Second, Chubb argues that even if employers may owe employees a fiduciary duty under certain circumstances, the allegations in the complaint are inconsistent with the assertion that Chubb owed Plaintiffs a fiduciary duty.

A claim for breach of fiduciary duty requires the plaintiff to establish (1) a fiduciary duty, (2) breach of that duty by defendant, and (3) damages as a consequence of that breach. *Rainbow Apparel, Inc. v. KCC Trading, Inc.*, No. 09-5319, 2010 WL 2179146, at *7 (D.N.J. May 26, 2010) (citing *In re Estate of Lash,* 776 A.2d 765 (N.J. 2001)). Here, Plaintiffs allege that Chubb had a fiduciary duty as their employer to act for and give advice to Plaintiffs regarding their employment benefits and the deferred compensation program. Plaintiffs claim that Chubb breached that duty by proposing that Plaintiffs participate in a program that used unrealistic assumptions concerning investment earnings, did not provide for the payment of additional premiums, did not adequately disclose the risks of the program, would result in unsustainable income tax liability, and did not have an exit mechanism. As a result of this alleged breach, Plaintiffs assert that they suffered damages, including but not limited to the loss of the benefit of the Estate Enhancement Program.

Despite Plaintiffs' nominal pleading of the three elements of the claim, Chubb argues that Plaintiffs nonetheless fail to state a claim on the grounds that the fiduciary duty alleged by Plaintiffs does not exist. Chubb argues that under New Jersey law, employers do not owe their employees a fiduciary duty. Plaintiffs disagree with Chubb's interpretation of the relevant law,

and argue that employers do owe employees a fiduciary duty under certain circumstances. But Plaintiffs fail to demonstrate that such circumstances are present.

This Court has noted that "[t]he Court is aware of no case that generally imposes on an employer a fiduciary duty to its employees." *Snyder v. Dietz & Watson, Inc.*, 837 F. Supp. 2d 428, 444 (D.N.J. 2011); *see also Pero v. Int'l Bus. Machines Corp.*, No. 12-7484, 2014 WL 37233, at *4 (D.N.J. Jan. 2, 2014) ("The Court knows of no case, and Plaintiffs' Counsel at oral argument could cite no case, which stands for the proposition that employers owe employees a fiduciary duty.") (citing *Daley v. Community Medical Ctr., Inc.*, No. 06-596, 2006 U.S. Dist. LEXIS 89581 at *28 (D.N.J. December 12, 2006)). Plaintiffs attempt to distinguish this line of cases on the grounds that these cases involve a duty to pay commissions or wages, and this case does not. However, the Court is not persuaded that this distinction is significant. And while Plaintiffs do cite cases establishing a fiduciary duty when employers administer benefit plans governed by ERISA, no party argues that the plan at issue is governed by ERISA. (Chubb's Supplemental Br., ECF No. 62; Pls.' Supplemental Br., ECF No. 63).

Given the language in *Snyder*, and Plaintiffs' failure to cite any relevant contrary law, the Court finds that Plaintiffs fail to demonstrate that Chubb owed them a fiduciary duty. Therefore, the breach of fiduciary claim (Count IV) will be dismissed with prejudice.

   *4. Count V: Detrimental Reliance*

Finally, Chubb makes two arguments for dismissal of Plaintiffs' claim of detrimental reliance. First, Chubb argues that Plaintiffs' detrimental reliance claim fails because the parties' relationship is governed by an express contract. Second, Chubb argues that Plaintiffs do not allege facts that support a claim of detrimental reliance.

Detrimental reliance, also known as promissory estoppel, is "an equitable doctrine founded in the fundamental duty of fair dealing imposed by law, that prohibits a party from repudiating a previously taken position when another party has relied on that position to his detriment." *Granelli v. Chicago Title Ins. Co.*, 569 F. App'x 125, 132 (3d Cir. 2014) (quoting *State v. Kouvatas,* 678 A.2d 1178, 1182 (N.J. Super. Ct. App. Div. 1996)); *Dent v. Cingular Wireless, LLC*, No. 07-0552, 2007 WL 1797653, at *5 (D.N.J. June 20, 2007).

Chubb argues that Plaintiffs fail to state a claim for detrimental reliance because the parties' relationship is governed by an express contract. Under New Jersey law, a plaintiff may not recover on both quasi-contractual theories such as detrimental reliance and a theory of breach of contract. *See, e.g.*, *Van Orman v. Am. Ins. Co.*, 680 F.2d 301, 310 (3d Cir. 1982); *Duffy v. Charles Schwab & Co.*, 123 F. Supp. 2d 802, 814 (D.N.J. 2000). However, New Jersey courts regularly allow plaintiffs to proceed past a motion to dismiss by pleading a breach of contract claim and a quasi-contractual claim in the alternative, on the assumption that the plaintiffs' breach of contract claim may fail. *See, e.g.*, *Ass'n of New Jersey Chiropractors v. Aetna, Inc.*, No. 09-3761, 2012 WL 1638166, at *11 (D.N.J. May 8, 2012) (collecting cases); *MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F. Supp. 2d 729, 736 (D.N.J. 2008); *contra Freightmaster USA, LLC v. Fedex, Inc.*, No. 14-3229, 2015 WL 1472665, at *6 (D.N.J. Mar. 31, 2015). Because Plaintiffs have pled detrimental reliance in the alternative, it would be premature for the Court to dismiss the claim at this time for this reason.

Next, Chubb argues that Plaintiffs fail to state a claim because the facts pled do not support a claim of detrimental reliance. To establish a claim for detrimental reliance, a plaintiff must show that the defendant made a representation, had knowledge that the plaintiff was acting on the basis of that representation, and that the plaintiff relied to their detriment on that

12

representation.  *Granelli*, 569 F. App'x at 132 (quoting *Kouvatas,* 678 A.2d at 1182).  Chubb argues that Plaintiffs fail to allege that Chubb made any representations given that the language of the memorandum announcing the program was extremely qualified, using words such as "could," "potentially," and "can," rather than making a concrete promise.  However, at this stage of the litigation, the Court must accept all of Plaintiffs' well-pleaded factual allegations as true.  *Fowler*, 578 F.3d at 210-11.  Plaintiffs allege that

> Chubb promised that the Estate Enhancement Program would result in increased benefits to the estates of the participants, that the programs would result in death benefits as set forth in the respective insurance policies, and that plaintiffs would not be responsible for additional premiums, and that the program was economically viable.

(Am. Compl. ¶ 51).  Accepting this allegation as true, Plaintiffs have pled the first element of their detrimental reliance claim.

Chubb also argues that Plaintiffs' allegations that they suffered a detriment and that they reasonably relied on the representation and are "conclusory" and thus fail to state a claim.  Plaintiffs claim that they "suffered damages, including, but not limited to, the loss of the benefit of the Estate Enhancement Program."  (Am. Compl. ¶ 54).  While Plaintiffs might have provided more detail, this statement of injury is adequate to meet the pleading standard for a motion to dismiss.  However, Plaintiffs provide only a conclusory legal claim that they reasonably relied on Chubb's alleged representations.  Plaintiffs state, "Plaintiffs Motamed, Fay and Fowler reasonably relied upon Chubb's promises and agreed to participate in the program based on the promises, including giving up their rights to deferred compensation and in planning for the benefits of the Estate Enhancement Program."  (Am. Compl. ¶ 53).  Plaintiffs do not explain how they relied upon Chubb's alleged promises or why their reliance might have been reasonable.

13

In the absence of any facts supporting the legal conclusion of reasonable reliance, this statement will be disregarded. Because Plaintiffs have failed to allege facts supporting the required element of reasonable reliance, the Court will dismiss the detrimental reliance claim (Count V) without prejudice.

## CONCLUSION

For the reasons stated above, Chubb's Motion to Dismiss Plaintiffs' Amended Complaint will be granted in part and denied in part. The Motion will be granted as to Counts IV and V, but denied as to Counts I-III. Count IV will be dismissed with prejudice; Count V will be dismissed without prejudice. Chubb's prior motion to dismiss Plaintiffs' original complaint will be denied as moot. A corresponding order follows.

*/s/ Anne E. Thompson*
ANNE E. THOMPSON, U.S.D.J.

**Dated:** March 23, 2016